ASHLEY M. KOLEY, CA Bar No. 334723
  akoley@foley.com
**FOLEY & LARDNER LLP**
555 SOUTH FLOWER STREET, SUITE 3300
LOS ANGELES, CA 90071
TELEPHONE:  213.972.4500
FACSIMILE:   213.486.0065

KADIE M. JELENCHICK, (*Pro Hac Vice* to be filed)
WI Bar No. 1056506
  kjelenchick@foley.com
**FOLEY & LARDNER LLP**
777 EAST WISCONSIN AVENUE
MILWAUKEE, WI 53202
TELEPHONE:  414.271.2400
FACSIMILE:   414.297.4900

*Attorneys for Plaintiff Big Boy
Restaurant Group, LLC*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BIG BOY RESTAURANT GROUP, LLC, a Michigan limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>RICK TRUHLS, an individual d/b/a Bobs5150.com, RORY SCOTT MACDONALD, an individual, S & P Fresh LLC, a California limited liability company, and WARLORD CLOTHING, INC., a California corporation,<br><br>Defendants. | Case No. 2:25-cv-07103<br><br>**COMPLAINT**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Big Boy Restaurant Group, LLC ("Plaintiff" or "Big Boy"), by and for its Complaint against Defendants Rick Truhls, d/b/a Bobs5150.com ("Bobs5150"), Rory Scott MacDonald, S & P Fresh, LLC ("S&P Fresh"), and Warlord Clothing, Inc. ("Warlord") (collectively, "Defendants") alleges to the Court as follows:

## PARTIES

1.      Big Boy Restaurant Group, LLC is a company organized and existing under the laws of the State of Michigan, with a principal place of business located at 26300 Telegraph Road, Southfield, Michigan, 48033.

2.      Plaintiff is informed and believes that Defendant Rick Truhls is an individual doing business as Bobs5150.com at 11420 Santa Monica Boulevard, # 25235, Los Angeles, California, 90025, and 8605 Santa Monica Boulevard, West Hollywood, California 90069.

3.      Plaintiff is informed and believes that Defendant Rory Scott MacDonald is an individual residing at 424 ½ Goldenrod Avenue, Corona Del Mar, California 92625.

4.      Plaintiff is informed and believes that Defendant S & P Fresh is a limited liability company organized under the laws of Delaware with a principal place of business at 2 Upper Newport Plaza, Newport Beach, California 92660.

5.      Plaintiff is informed and believes that Defendant Warlord is a corporation organized under the laws of California with a principal place of business at 1506 Columbia Avenue, Suite 9, Riverside, California, 92507.

## JURISDICTION AND VENUE

6.      This is an action at law and in equity for trademark infringement and counterfeiting under the Lanham Act, 15 U.S.C. § 1114, unfair competition and false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a), trademark dilution under the Lanham Act, 15 U.S.C. § 1125(c), and for substantial and related claims of trademark infringement, unfair competition, and deceptive trade practices under the common law of the State of California.

7.      This Court has subject matter jurisdiction over the claims pursuant to 15 U.S.C. § 1121(a), 28 U.S.C. §§ 1331 and 1338(a) and (b), and supplemental jurisdiction

COMPLAINT
Case No. 2:25-cv-07103

over the claims arising under the common law of the State of California pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy.

8.    This Court has personal jurisdiction over Defendant Bobs5150 in that at all times pertinent hereto where, upon information and belief, Bobs5150 is domiciled in the forum state of California. Additionally, Bobs5150 has purposefully availed itself of the privilege of conducting business in California, taking advantage of the benefits and protections of its laws by operating www.bobs5150.com (the "Bobs5150 Infringing Website") from this District, by marketing the Bobs5150 Infringing Website to residents of this state, and by minimally, printing, selling, and distributing infringing merchandise as discussed herein to residents in this state. Plaintiff's claims arise out of Bobs5150's conduct as alleged herein.

9.    This Court has personal jurisdiction over Defendant MacDonald in that at all times pertinent hereto where, upon information and belief, MacDonald is domiciled in the forum state of California. Additionally, MacDonald has purposefully availed himself of the privilege of conducting business in California, taking advantage of the benefits and protections of its laws by assisting Defendant S & P Fresh in the creation, marketing, and sale of infringing merchandise, as discussed herein, in Burbank, California, to residents in this state and, upon information and belief, assists S & P Fresh in the manufacture, advertisement, sale, and distribution of infringing merchandise and operation of infringing websites as alleged herein. Plaintiff's claims further arise out of MacDonald's conduct as alleged herein.

10.    This Court has personal jurisdiction over Defendant S & P Fresh in that all times pertinent hereto where, upon information and belief, S & P Fresh is domiciled in the forum state of California. Additionally, S & P Fresh has purposefully availed itself of the privilege of conducting business in California, taking advantage of the benefits and protections of its laws by operating Plaintiff's franchised Bob's Big Boy restaurant in Burbank, California where it creates, markets, and sells infringing merchandise, as

COMPLAINT
Case No. 2:25-cv-07103

discussed herein, in Burbank, California, to residents in this state. Plaintiff's claims arise out of S & P Fresh's conduct as alleged herein.

11.   This Court has personal jurisdiction over Defendant Warlord, in that all times pertinent hereto, where upon information and belief, Warlord is domiciled in the forum state of California. Additionally, Warlord has purposefully availed itself of the privilege of conducting business in California, taking advantage of the benefits and protections of its laws by, minimally, manufacturing, printing, and distributing infringing merchandise, as discussed herein, in Riverside, California, to residents in this state. Plaintiff's claims arise out of Warlord's conduct as alleged herein.

12.   For the same reasons outlined above in Paragraphs 8-11, venue is proper in this District pursuant to 28 U.S.C. § 1391.

## **BACKGROUND**

13.   BIG BOY has been a trusted brand in the restaurant services market for over 80 years.

14.   The Big Boy Restaurant system was founded in 1936 by Bob Wian, one of Plaintiff's predecessors, who opened a 10-seat diner in Glendale, California called "Bob's Pantry":



COMPLAINT
Case No. 2:25-cv-07103

15.     Not long after, Wian pioneered the double-decker hamburger that he called the "Big Boy." Wian soon changed the name of his diner to "Bob's Big Boy," a name that continues to be in use in California today. The "Big Boy" was accompanied by a stylized boy-in-checkered-overalls character (the "BIG BOY mascot"). Early depictions of the BIG BOY mascot showed "Big Boy" with his distinctive checkered overalls, dark pompadour hair, and a burger held aloft in one hand.



16.     Beginning in 1952, the BIG BOY brand grew through an innovative franchise model, resulting in a coast-to-coast system of independently operated, yet uniformly branded, restaurants. By the late 1970s, more than one thousand Big Boy restaurants were operating throughout the United States.

17.     Although industry consolidation later reduced the overall footprint, the BIG BOY brand remains active nationwide. Plaintiff continues to license or operate approximately 70 restaurants across multiple states and maintain an active program of franchising, merchandising, and promotional partnerships that generate substantial annual revenue. Plaintiff also licenses the brand internationally, including in Japan, where over 270 restaurants operate under the BIG BOY name.

18.     Beginning in or about 1973, Plaintiff and its predecessors extended the BIG BOY brand beyond restaurant services by launching a dedicated line of retail merchandise. Today, Plaintiff sells merchandise including, without limitation:

COMPLAINT
Case No. 2:25-cv-07103

- T-Shirts;
- Hoodies;
- Baseball caps;
- Trucker hats;
- Tank tops;
- Sweaters;
- Beanies;
- Pint glasses;
- Coffee mugs;
- Coin banks;
- Stickers;
- Posters;
- Tote bags;
- Keychains;
- Fridge magnets;
- Posters;
- Stress balls;
- Signs;
- Socks;
- Backpack clips; and
- Mouse pads.








19.     Plaintiff has continuously sold the retail merchandise nationwide through multiple channels of trade, such as in-restaurant gift counters and an official website (https://shop.bigboy.com). These merchandise sales have grown and generate hundreds of thousands of dollars in annual revenue and, through millions of dollars in promotion and digital marketing, further reinforce the consuming public's association of the BIG BOY IP[1] with Plaintiff and the goodwill they embody.

---

[1] "BIG BOY IP" encompasses the BIG BOY Marks and Common Law Marks as defined

## BIG BOY'S INTELLECTUAL PROPERTY

## BIG BOY Marks and Common Law Marks

20.    Plaintiff Big Boy Restaurant Group, LLC is the registered owner of the following trademarks on the Principal Register of the United States Patent and Trademark Office ("USPTO") (collectively, the "BIG BOY Marks"):

| | Reg. No./Key Dates | Trademark |
|---|---|---|
| 1 | Reg. Nos. 0913601; 1823393<br>First Use: 1938<br>Registered: June 8, 1971; February 22, 1994 | BIG BOY |
| 2 | Reg. No. 0910758<br>First Use: 1967<br>Filed: April 16, 1970<br>Registered: March 30, 1971 | Design<br> |
| 3 | Reg. No. 1166686<br>First Use: June 1965<br>Filed: March 26, 1980<br>Registered: August 25, 1981 | Design<br> |
| 4 | Reg. No. 1230137<br>First Use: 1938 | BOB'S |

herein.

| Reg. No./Key Dates | Trademark |
|---|---|
| Filed: September 11, 1981<br>Registered: March 8, 1983 | |
| 5 | Reg. No. 1230170<br>First Use: 1938<br>Filed: September 11, 1981<br>Registered: March 8, 1983 | BOB'S BIG BOY |
| 6 | Reg. No. 1300991<br>First Use: 1938<br>Filed: October 13, 1981<br>Registered: October 16, 1984 | BOB'S and design<br> |
| 7 | Reg. No. 1818909<br>First Use: April 1988<br>Filed: October 14, 1992<br>Registered: February 1, 1994 | Design<br> |
| 8 | Reg. No. 2090105<br>First Use: November 1970<br>Filed: April 26, 1996<br>Registered: August 19, 1997 | Design<br> |
| 9 | Reg. No. 3898347<br>First Use: April 19, 2010<br>Filed: July 9, 2010 | HOME OF THE ORIGINAL<br>DOUBLE DECKER<br>CHEESEBURGER |

COMPLAINT
Case No. 2:25-cv-07103

| | Reg. No./Key Dates | Trademark |
|---|---|---|
| | Registered: January 4, 2011 | |
| 10 | Reg. No. 4445896<br>First Use: 1960<br>Filed: December 29, 2011<br>Registered: December 10, 2013 | BIG BOY with Design<br> |

21.    On December 22, 2000, non-party Elias Brothers Restaurants, Inc., the previous holder of the BIG BOY Marks, assigned all legal title to the intellectual property in question to Plaintiff. Accordingly, Plaintiff Big Boy Restaurant Group, LLC is the legal owner of the BIG BOY IP.

22.    In 2007, Plaintiff's predecessor and Frisch's Restaurants, Inc., an Ohio corporation, resolved a concurrent use proceeding before the USPTO by entering into a written agreement that defined the geographic scope of rights for certain marks. Pursuant to that agreement, and as reflected in the federal registration, Plaintiff holds the exclusive right to use eight out of ten of the BIG BOY Marks throughout the United States, excluding the states of Indiana, Kentucky, and parts of Ohio and Tennessee. Those eight marks are BIG BOY Mark Nos. 1–3, 5, 7, 8, and 10 as listed above. Plaintiff's rights for those specific marks expressly include the state of California, where they have continuously used the mark in commerce and established strong common law and statutory rights.

23.    True and correct copies of the registration certificates for each of the BIG BOY Marks are attached hereto as **Exhibit 1**.

24.    The BIG BOY Marks have each been used continuously in commerce for at least five years since their registration, and thus have each become incontestable pursuant to 15 U.S.C. § 1065, thereby constituting conclusive and independent evidence of Plaintiff's exclusive right to use the BIG BOY Marks in commerce in connection with the goods and services identified in the registrations.

COMPLAINT
Case No. 2:25-cv-07103

25.    As a result of Plaintiff's promotion and use of the BIG BOY Marks in the marketplace, the scope of Plaintiff's use and rights in the BIG BOY Marks extends beyond the goods and services specifically included in the registrations listed above and also extends to other BIG BOY-formative marks. Plaintiff thus has valid and protectable common law rights in its BIG BOY Marks beyond restaurant services and include, minimally, the goods listed in Paragraph 18.

26.    Additionally, through uninterrupted commercial use for more than seventy years, Plaintiff has also acquired extensive common-law rights in additional source identifiers, including but not limited to the ORIGINAL DOUBLE DECK HAMBURGER mark ("Common Law Marks") which is proudly displayed on the Burbank franchise location's iconic sign.

27.    By virtue of longstanding, widespread, and continuous use of the BIG BOY IP, the consuming public has come to recognize it as identifying goods and services that originate exclusively with Plaintiff and as signifying Plaintiff's accumulated goodwill and value.

**FAME, GOODWILL, AND POP-CULTURE SIGNIFICANCE**

28.    For nearly nine decades, Plaintiff and its predecessors have heavily invested in advertising and promotion, including national television and radio campaigns, print media, sponsorships, and extensive social-media engagement, resulting in broad consumer recognition of the BIG BOY IP.

29.    The brand's distinctive roadside architecture has contributed to its public visibility and goodwill. For example, the 1949 Bob's Big Boy restaurant in Burbank, California has been designated a "Point of Historical Interest" by the state of California for its classic design. Designed by renowned architect Wayne McAllister, the towering 70-feet-tall neon BOB'S sign displaying the words "Bob's Big Boy Original Double Deck Hamburger" has become a California landmark along with the 6-feet-tall fiberglass BIG BOY statue that greets customers at the front entrance:

COMPLAINT
Case No. 2:25-cv-07103

30.     The Bob's Big Boy Burbank location has been featured in multiple films and television shows, including:



o    Scenes from the 1995 film *Heat*, directed by Michael Mann;

o    A 2009 episode of television show *Dancing with the Stars*;

o    A 2015 episode of the television show *Blunt Talk*;

o    A 2017 episode of the television show *Jay Leno's Garage*; and

o    A 2024 episode of the television show *The Lincoln Lawyer*.

31.     In 2022, Big Boy became an official sponsor for NFL team, the Detroit Lions.

32.     Bob's Big Boy Burbank location has also been visited by notable celebrities, including the Beatles who publicly visited during their 1965 U.S. tour. A plaque still marks the booth where they sat, and both tourists and locals alike request to sit at the "Beatles table."

33.     Today, Bob's Big Boy Burbank location hosts weekly classic car shows, uniting classic cars with the historical 1950s style of the BIG BOY logo and statue.

34.     From 1956 to the 1990s, Plaintiff's predecessors distributed a comic book series nationwide. Titled *Adventures of the Big Boy*, the comic was created in partnership with Timely Comics, a predecessor to Marvel, and was originally written by the legendary comic book writer, Stan Lee. It ran for more than 500 issues, making it one of the longest-running corporate comic publications in American history.

COMPLAINT
Case No. 2:25-cv-07103

35.    The BIG BOY statue was memorably featured in the 1997 film *Austin Powers: International Man of Mystery*. In the movie, the villain Dr. Evil escapes Earth inside a spacecraft shaped like a BIG BOY statue. The scene is widely cited as a humorous homage to the chain's iconic imagery.

36.    These references reinforce the widespread public association between the BIG BOY mascot and American pop culture. The mascot is not merely ornamental—it functions as a powerful source identifier that signals the brand's heritage, values, and reputation to consumers across generations.

37.    The BIG BOY mascot remains one of the most recognizable characters in U.S. food service. As a direct result of Plaintiff's longstanding, continuous, and widespread use—and of the BIG BOY Mark's repeated appearance in mainstream media—the BIG BOY Marks have achieved a high degree of distinctiveness and enjoy fame within meaning of 15 U.S.C. § 1125(c), well before any acts of infringement alleged herein.

## DEFENDANTS' CONDUCT
### S & P Fresh and MacDonald

38.    On June 24, 2013, Plaintiff entered into a franchise agreement with S & P Fresh authorizing S & P Fresh, among other things, to use the BIG BOY Marks solely in the manner that Plaintiff authorizes with the agreement to take effect on July 1, 2013. On June 24, 2013, Plaintiff and S & P Fresh entered into the First Amendment to the Franchise Agreement. The Franchise Agreement, as amended, is now expired.

39.    Upon information and belief, MacDonald manages all aspects of merchandise designed, manufactured, advertised, and sold by S & P Fresh. Upon information and belief, MacDonald is also responsible for website and social media development and operation for S & P Fresh.

40.    The Franchise Agreement prohibited, among other things, S & P Fresh from establishing any internet or social media presence in connection with Big Boy's restaurant without Plaintiff's prior written consent and that all features of the website must be approved by Plaintiff.

41.    The Franchise Agreement also prohibited, among other things, S & P Fresh from communicating and divulging confidential and proprietary information, which includes drawings, memos, letters, writings, e-mails, reports, client lists, materials, equipment, technology, methods, procedures, techniques, specifications, computer programs, systems, and other data. Further, the Franchise Agreement required S & P Fresh to provide immediate written notice to Plaintiff about any and all claims or complaints made against or associated with the BIG BOY Marks.

42.    Upon information and belief, S & P Fresh, with assistance from MacDonald, established a presence on the internet when it created the website https://bobs.net ("S & P Fresh Infringing Website") which distributes products nationwide, accepts various forms of U.S. payment methods, delivers to residents in this District, and still operates today.

43.    While Plaintiff provided authorization for S & P Fresh to operate a website— as the website existed in 2013—the S & P Infringing Website only sold 5 types of authorized memorabilia, and six authorized t-shirt designs as shown below:





44.    However, since then, the S & P Fresh Infringing Website has changed significantly and offers for sale, markets, sells, and distributes merchandise that features and incorporates the BIG BOY Marks or marks that are identical, substantially indistinguishable from the BIG BOY Marks ("S & P Fresh Infringing Merchandise") or

that are likely to cause confusion about the source, origin, sponsorship or approval of the S & P Fresh Infringing Merchandise with Plaintiff—all of which is unauthorized.

45.    For example, in addition to numerous other unauthorized BIG BOY branded products, S & P Fresh, with MacDonald's assistance, sells the following unauthorized stickers on the S & P Infringing Website and at the Burbank franchise location, all of which feature certain of the BIG BOY Marks:



46.    The unauthorized skull character is also prominently featured on hoodies, skateboards, fingerboards, patches, and t-shirts, all of which are sold by Defendant S & P Fresh at the Burbank location and on the S & P Fresh Infringing Website.

COMPLAINT
Case No. 2:25-cv-07103




47.    Defendant S & P Fresh, with assistance from Defendant MacDonald, also sells each of the infringing stickers at the Burbank location without Plaintiff's authorization.




48.    Upon information and belief, S & P Fresh, with the assistance MacDonald created and operates an Instagram account, @bobsbigboyburbank ("S & P Fresh Infringing Instagram"), which is a social media presence, without Plaintiff's authorization.

49.    The S & P Fresh Infringing Instagram is globally accessible and promotes and advertises the Burbank location using photographs that feature and incorporate the BIG

BOY Marks or marks that are identical, substantially indistinguishable from the BIG BOY Marks, including the S & P Infringing Merchandise, all of which is unauthorized by Plaintiff. The S & P Instagram also includes a direct link to the S & P Infringing Website.

50.    On March 22, 2022, Plaintiff demanded in writing that S & P Fresh cease selling the unauthorized merchandise on the S & P Fresh Infringing Website.

51.    On March 29, 2022, S & P Fresh responded with a proposal to sell certain BIG BOY branded merchandise with Plaintiff's consent but Plaintiff did not accept S & P Fresh's proposal and did not consent to S & P Fresh selling the unauthorized BIG BOY branded merchandise.

52.    On June 30, 2023, the Franchise Agreement expired. Big Boy did not renew the Franchise Agreement terms with S & P Fresh and, since the June 30, 2023 expiration, S & P Fresh no longer has Plaintiff's authorization to operate the S & P Infringing Website in any form.

53.    S & P Fresh, with assistance from MacDonald, continues to operate the S & P Fresh Infringing Website, the S & P Infringing Instagram, and continues to sell the S & P Fresh Infringing Merchandise without Plaintiff's authorization.

**S & P Fresh, Bobs5150, MacDonald, and Warlord**

54.    Without Plaintiff's consent or authorization, and beginning decades after Plaintiff's acquired protectable, exclusive rights in its BIG BOY IP, upon information and belief, Defendant Bobs5150 created, operates and controls an online retail business that transacts under the domain www.bobs5150.com ("Bobs5150 Infringing Website").

55.    The Bobs5150 Infringing Website has been actively offering products to U.S. consumers since at least March 2025. Listings are available nationwide and until recently, accepted U.S. payment methods via Shopify and provided shipping into this District.  Per a posting on the Bobs5150 Infringing Website, the "Shopify store has been unexpectedly shut down … [with Bobs5150] actively exploring [its] options for appeal and working to resolve the situation.  In the meantime, [Bobs5150] remain[s] fully committed to fulling

all past orders." More recently, Bobs5150 Infringing Website depicts what appears to be a fake FBI seizure notice.

56.    Upon information and belief, prior to the creation of the Bobs5150 Infringing Website, S & P Fresh and MacDonald engaged Defendant Truhls to develop a website for S & P Fresh, providing Truhls with the BIG BOY IP in the form of, minimally, drawings and specifications to use for the S & P Fresh Infringing Website without Plaintiff's authorization. Upon information and belief, the relationship between S & P Fresh, MacDonald, and Truhls was terminated, leaving the BIG BOY IP in possession of Truhls without Plaintiff's authorization.

57.    S & P Fresh did not notify Plaintiff about the initial disclosure of the BIG BOY IP to Truhls or Bobs5150, nor did S & P Fresh notify Plaintiff about the unauthorized use of the BIG BOY IP after S & P Fresh's relationship with Truhls ceased. It was only on July 22, 2025, that Plaintiff learned of the connection between Truhls, on the one hand, and S & P Fresh and MacDonald, on the other hand.

58.    Alternatively, upon information and belief, S & P Fresh and MacDonald directed or caused the creation, operation, and maintenance of the Bobs5150 Infringing Website as retaliation for Plaintiff's refusal to renew the Franchise Agreement on S & P Fresh's proposed new terms.

59.    Defendant Bobs5150 advertises, offers for sale, and sells clothing (the "Bobs5150 Infringing Merchandise") bearing graphics and logos that are identical to, or substantially indistinguishable from Plaintiff's BIG BOY IP.

60.    As one example, the Bobs5150 Infringing Website's homepage prominently features Plaintiff's BOB'S trademark and logo in the same or similar red color that is used by Plaintiff but is simply reversed such that it reads as "sqoB" with the numbers "5150" above it:

61.    A comparison of Plaintiff's BOB'S logo shows that Defendant Bobs5150 used an identical copy of the logo and simply flipped it both 180 degrees vertically and horizontally:

  

62.    Defendant Bobs5150 juxtaposes the BIG BOY IP with graphic themes of gun violence, false affiliation with competitors, sexual innuendo, and mental illness—depicting the BIG BOY mascot holding a firearm to his head, dressed as Ronald MacDonald, dressed as a "lady-boy," and paired with slogans inconsistent with the BIG BOY brand—thereby

associating Plaintiff's famous marks with off-brand, violent, and sensitive mental-health content wholly at odds with Plaintiff's family-friendly brand identity and reputation:



COMPLAINT
Case No. 2:25-cv-07103



63. The Bobs5150 Infringing Website's "About" page describes a character named "Big Bobby Kong" who stayed in a mental institution for multiple personality syndrome and who hallucinates about a "Lucky Magic Hamburger Boy":



Home   About   Contact                                United States | USD $ ⌄   🔍  👤  🛒

# About Bobs 5150

Big Bobby Kong, aka Bobs 5150, is an eccentric Chinese fashion designer whose daring, colorful creations have revolutionized the fashion world. After a pivotal stay in a mental institution for multiple personality syndrome, Bobby and his alternate personalities (Bobs) discovered a muse: a hallucinatory "Lucky Magic Hamburger Boy" that transforms into vibrant forms, inspiring his avant-garde apparel brand, Bobs 5150. A hamburger enthusiast, he infuses his love for the iconic dish into his bold, streetwear-meets-high-fashion designs. Bobby's chaotic brilliance defines his work, embodying his belief that he's "putting points on the board in the big game." His signature catchphrase, **SCORE**! stylized in the "sqoЯ" logo with letter forms inspired by the ornate, flowing aesthetic of Thai script, reflects his triumphant, score-keeping ethos. For Bobby, life's a wild game, and he's always shouting 5150 sqoЯ!

64. Section 5150 of the California Welfare and Institutions Code provides that "[w]hen a person, as a result of a mental health disorder, is a danger to others, or to themselves, or gravely disabled, a peace officer … may, upon probable cause, take, or cause

to be taken, the person into custody for a period of up to 72 hours for assessment, evaluation, and crisis intervention, or placement for evaluation and treatment in a facility designated by the county for evaluation and treatment and approved by the State Department of Health Care Services." On information and belief, Defendant incorporates 5150 into its business name to refer to § 5150 of the California Welfare and Institutions Code. More specifically, on information and belief, Defendant selected the number "5150" to use in conjunction with the BIG BOY Marks to cause confusion amongst the general public and to diminish the public's perception of the famous BIG BOY Marks by, minimally, associating the BIG BOY Marks and goodwill with mentally ill persons that require involuntary psychiatry holds.

65.     On or about April 24, 2025, Plaintiff sent Bobs5150 a letter via U.S. Mail to its advertised address of 11420 Santa Monica Boulevard # 25235, Los Angeles, California, 90025. Plaintiff's letter identified certain of the Bobs5150 Infringing Merchandise as infringing Plaintiff's intellectual property and demanded that Bobs5150 cease and desist all infringing activities. A true and correct copy of this correspondence is attached as **Exhibit 2**.

66.     On or about May 6, 2025, Bobs5150 responded to Plaintiff's April 24, 2025 letter via email from sales@bobs5150.com. A true and correct copy of this correspondence is attached as **Exhibit 3**.

67.     On or about May 7, 2025, Defendant Bobs5150 modified the "About" section of the Infringing Website and added six new Bobs5150 Infringing Merchandise as shown below that incorporate the BIG BOY IP:

COMPLAINT
Case No. 2:25-cv-07103

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



Bobs 5150 Big Mummy Boy
From $23.99 USD



Bobs 5150 Big Birthday Boy
From $23.99 USD



Bobs 5150 Big Cowboy



Bobs 5150 Burglar Boy & Robbie the Raccoon
From $23.99 USD



Bobs 5150 Super Mario Boy
From $23.99 USD



Bobs 5150 El Duderino Boy
From $23.99 USD

COMPLAINT
Case No. 2:25-cv-07103

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

68.    On or about May 18, 2025, Defendant Bobs5150 added sweatshirts to the available product offerings on the Bobs5150 Infringing Website and continued to circulate marketing emails promoting both the Bobs5150 Infringing Merchandise:





COMPLAINT
Case No. 2:25-cv-07103



COMPLAINT
Case No. 2:25-cv-07103

69.    On or around May 31, 2025, Defendant Bobs5150 added six new infringing designs that incorporate the BIG BOY Marks, some of which are identical to the infringing designs featured on the S & P Fresh Infringing Website and S & P Fresh Infringing Merchandise:



COMPLAINT
Case No. 2:25-cv-07103

70.    On or about May 1, 2025, Plaintiff conducted a test purchase through the Bobs5150 Infringing Website, ordering two t-shirts that prominently displayed the BIG BOY Marks. The goods were shipped from Warlord in Riverside, California, and arrived in Thousand Oaks, California, on May 13, 2025. Physical inspection confirmed that Bobs5150 Infringing Merchandise include the BIG BOY Marks as depicted in the Bobs5150 Infringing Website's photos. The shipping label affixed to the package identified Defendant Warlord, as the sender.

71.    On July 3, 2025, Big Boy sent another cease and desist letter to Defendants MacDonald, S & P Fresh, Bobs5150, and Warlord with a copy of a iteration of this Complaint.

72.    Shortly thereafter, in July 2025, Bobs5150 uploaded a photograph of a fake notice that its website has been seized by the FBI when, upon information and belief, the Bobs5150 Infringing Website has not, in fact, been seized by the FBI.



COMPLAINT
Case No. 2:25-cv-07103

73.    On information and belief, Bobs5150 is directing Warlord to manufacture, print, and distribute the Bobs5150 Infringing Merchandise to end-use customers.

74.    On information and belief, Warlord ships Bobs5150 Infringing Merchandise nationwide and accepts various forms of popular U.S. payment methods, like Shopify.

75.    On information and belief, Warlord exercises control over every material step in the production process, including sourcing garments, printing the infringing designs, packaging the Bobs5150 Infringing Merchandise, and mailing the same to end-use customers.

76.    On information and belief, Defendant Bobs5150 has gained access to Big Boy's customer list and is using it to circulate such promotional emails to Big Boy's customers.

77.    On information and belief, S & P Fresh had knowledge of the Bobs5150 Infringing Website and failed to notify Plaintiff about the Bobs5150 Infringing Website.

78.    On information and belief, Defendants Bobs5150, S & P Fresh, and MacDonald are targeting Big Boy's customers and/or by emailing promotional and/or marketing materials featuring the Bobs5150 Infringing Merchandise and Bobs5150 Infringing Website directly to Big Boy's customers.

79.    Upon information and belief, Defendant Bobs5150 selected designs for the Bobs5150 Infringing Merchandise to cause confusion amongst the general public about the origin of the Bobs5150 Infringing Merchandise and Bobs5150 Infringing Website and to diminish the public's perception of the famous BIG BOY Marks including by associating the BIG BOY Marks with, among other things, the dangerous game of Russian roulette ("Russian Roullette" [sic] T-Shirt) and sexual innuendo inconsistent with the family image of the BIG BOY IP ("Big Lady Boy" T-Shirt states "Original Double Deck Hamburger with Weiner!").

80.    Upon information and belief, Defendants' adoption of the BIG BOY Marks and Common Law Marks was for the purpose of misleading consumers into believing that that Plaintiff is somehow affiliated or associated with the S & P Fresh Infringing

Merchandise, the S & P Fresh Infringing Website, the Bobs5150 Infringing Merchandise, and the Bobs5150 Infringing Website.

81.     Upon information and belief, Defendants adopted the BIG BOY IP on the S & P Fresh Infringing Merchandise and Bobs5150 Infringing Merchandise with the deliberate purpose of passing off those goods as genuine BIG BOY-branded merchandise authorized, sponsored, or approved by Plaintiff.

82.     Defendants' deployment of the BIG BOY Marks and Common Law Marks is plainly used as a source identifier rather than an expressive, ornamental, or nominative reference. The various marks appear on the S & P Fresh Infringing Website, the Bobs5150 Infringing Website, in marketing emails, and on the products themselves as the sole brand designation, and they function in commerce to signify the origin of the goods and to induce consumers to believe they are purchasing authentic BIG BOY merchandise.

83.     Upon information and belief, Defendants have joint ownership or control over the S & P Fresh Infringing Website, S & P Fresh Infringing Merchandise, Bobs5150 Infringing Website, and Bobs5150 Infringing Merchandise.

## FIRST CAUSE OF ACTION

### Infringement of Registered Trademarks under 15 U.S.C. § 1114

84.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs, inclusive, as though fully set forth herein.

85.     Defendants' unauthorized use in commerce of the BIG BOY Marks as alleged herein is likely to cause confusion as to the sponsorship, affiliation, connection, and/or association between Defendants and Plaintiff and is likely to cause consumers to believe, contrary to fact, that the S & P Fresh Infringing Website, S & P Fresh Infringing Merchandise, S & P Infringing Instagram, Bobs5150 Infringing Website, and Bobs5150 Infringing Merchandise are authorized, endorsed, or sponsored by Plaintiff or that Defendants are in some way affiliated with or sponsored by Plaintiff. Defendants' conduct therefore constitutes infringement of Plaintiff's BIG BOY Marks in violation of 15 U.S.C. § 1114.

COMPLAINT
Case No. 2:25-cv-07103

86.    Specifically, these actions constitute infringement of the BIG BOY Marks listed in Paragraph 20.

87.    Upon information and belief, Defendants' infringement of Plaintiff's BIG BOY Marks has been and is deliberate, willful, and in bad faith.

88.    As a direct and proximate result of the unlawful acts described above, Plaintiff has been damaged, and Defendants have been unjustly enriched, in an amount to be determined at the time of trial.

89.    Unless enjoined by this Court, Defendants' unlawful acts will continue to cause irreparable damage, loss, and injury to Plaintiff for which it has no adequate remedy at law.

90.    Pursuant to 15 U.S.C. §§ 1116–1117, Plaintiff is entitled to injunctive relief, actual damages in an amount to be determined at trial, to have such damages trebled, to Defendants' profits, to the costs of this action, and to their attorneys' fees.

## SECOND CAUSE OF ACTION

### Counterfeiting of Registered Trademarks under 15 U.S.C. § 1114

91.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs, inclusive, as though fully set forth herein.

92.    Defendants' unauthorized use in commerce of spurious designations on the S & P Fresh Infringing Website, S & P Fresh Infringing Instagram, S & P Fresh Infringing Merchandise, Bobs5150 Infringing Website, and Bobs5150 Infringing Merchandise that are reproductions, copies, or colorable imitations of Plaintiff's BIG BOY Marks, on and in connection with websites and merchandise as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of the infringing merchandise and websites as alleged herein, and is likely to cause consumers to believe, contrary to fact, that Defendants' merchandise is sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendants are in some way affiliated with or sponsored by Plaintiff. Defendants' conduct therefore constitutes counterfeiting of Plaintiff's BIG BOY Marks in violation of 15 U.S.C. § 1114.

COMPLAINT
Case No. 2:25-cv-07103

93.    Upon information and belief, Defendants' counterfeiting of Plaintiff's BIG BOY Marks has been and is deliberate, willful, and in bad faith.

94.    As a direct and proximate result of the unlawful acts described above, Plaintiff has been damaged, and Defendants have been unjustly enriched, in an amount to be determined at the time of trial.

95.    Because Defendants' conduct is willful, Plaintiff is also entitled to statutory damages under 15 U.S.C. § 1117(c) in the amount of $2,000,000.00 per counterfeited mark.

96.    Unless enjoined by this Court, Defendants' unlawful acts will continue to cause irreparable damage, loss, and injury to Plaintiff for which it has no adequate remedy at law.

97.    Pursuant to 15 U.S.C. §§ 1116–1117, Plaintiff is entitled to injunctive relief, actual damages in an amount to be determined at trial, to have such damages trebled, to Defendants' profits, statutory damages, to the costs of this action, and to its attorneys' fees.

## THIRD CAUSE OF ACTION

**Unfair Competition and False Designation of Origin under 15 U.S.C. § 1125(a)— BIG BOY Marks and Common Law Marks**

98.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs, inclusive, as though fully set forth herein.

99.    In addition to the BIG BOY Marks, Plaintiff also owns valuable common law trademark rights for use with restaurant services and the merchandise identified in paragraph 18 which includes clothing and other items. By virtue of Plaintiff's use of the various marks in connection with the promotion and sale of goods and services, the BIG BOY Marks and Common Law Marks have gained widespread consumer recognition and have developed valuable associated goodwill.

100.   Upon information and belief, Defendants have used and are using the BIG BOY Marks and Common Law Marks in interstate commerce, without the consent of Plaintiff, to identify the S & P Fresh Infringing Website, S & P Infringing Instagram, S &

COMPLAINT
Case No. 2:25-cv-07103

P Fresh Infringing Merchandise, Bobs5150 Infringing Website, and Bobs5150 Infringing Merchandise in connection with the advertising and promotion of the same.

101.   Defendants' unauthorized use in commerce of the BIG BOY Marks and Common Law Marks as alleged herein is likely to cause confusion as to (1) the affiliation, connection, and/or association between Defendants' websites and merchandise as alleged herein; (2) the sponsorship, endorsement, and/or approval of Defendants' websites and merchandise as alleged herein by Plaintiff; and (3) the origin of Defendants' websites and merchandise as alleged herein. Defendants' conduct therefore violates 15 U.S.C. § 1125(a).

102.   Upon information and belief, Defendants' infringement of the BIG BOY Marks and Common Law Marks has been and is deliberate, willful, and in bad faith.

103.   As a direct and proximate result of the unlawful acts described above, Plaintiff has been damaged, and Defendants have been unjustly enriched, in an amount to be determined at the time of trial.

104.   Unless enjoined by this Court, Defendants' unlawful acts will continue to cause irreparable damage, loss, and injury to Plaintiff for which it has no adequate remedy at law.

105.   Pursuant to 15 U.S.C. §§ 1116–1117, Plaintiff is entitled to injunctive relief, actual damages in an amount to be determined at trial, to have such damages trebled, to Defendants' profits, to the costs of this action, and to their attorneys' fees.

## FOURTH CAUSE OF ACTION

### Trademark Dilution under 15 U.S.C. § 1125(c)

106.   Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs, inclusive, as though fully set forth herein.

107.   Plaintiff's BIG BOY Marks are famous and distinctive within the meaning of the Lanham Act, 15 U.S.C. § 1125(c), and Plaintiff has built substantial and valuable goodwill in the BIG BOY Marks. The BIG BOY Marks have enjoyed such distinction and fame since long before Defendants commenced its unauthorized use of the BIG BOY Marks.

108.   Upon information and belief, Defendants have used and are using the BIG BOY Marks in interstate commerce in connection with the advertising and promotion of goods sold or offered by Defendant.

109.   Defendants' unauthorized use in commerce of the BIG BOY Marks as alleged herein is likely to cause and has caused actual harm to Plaintiff by diluting and weakening the unique and distinctive significance and quality of the BIG BOY Marks to identify certain of Plaintiff's goods and services and/or by tarnishing the BIG BOY Marks in the minds of consumers. Defendants' conduct therefore violates 15 U.S.C. § 1125(c).

110.   Upon information and belief, Defendants' dilution of Plaintiff's BIG BOY Marks has been and is deliberate, willful, and in bad faith.

111.   As a direct and proximate result of the unlawful acts described above, Plaintiff has been damaged, and Defendants have been unjustly enriched, in an amount to be determined at the time of trial.

112.   Unless enjoined by this Court, Defendants' unlawful acts will continue to cause irreparable damage, loss, and injury to Plaintiff for which it has no adequate remedy at law.

113.   Pursuant to 15 U.S.C. §§ 1116–1117, Plaintiff is entitled to injunctive relief, actual damages in an amount to be determined at trial, to have such damages trebled, to Defendants' profits, to the costs of this action, and to its attorneys' fees.

## FIFTH CAUSE OF ACTION

### Unfair Competition Under Cal. Bus. & Prof. Code § 17200

114.   Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs, inclusive, as though fully set forth herein.

115.   Defendants' conduct as alleged and described above further constitutes unlawful business acts under § 17200 of the California Business and Professions Code.

116.   Defendants' acts of infringement of Plaintiff's BIG BOY Works in violation of the Lanham Act, as alleged herein, constitute unlawful business acts or practices in the

course of business, trade, or in commerce, in violation of California Business and Professions Code § 17200.

117. Defendants' conduct is causing irreparable injury to Plaintiff and to its goodwill and reputation and will continue to both damage Plaintiff and deceive the public unless enjoined by this Court. Plaintiff has no adequate remedy at law.

118. Plaintiff is entitled to, among other relief, injunctive relief and restitution, together with prejudgment and post-judgment interest.

## SIXTH CAUSE OF ACTION

### Trademark Infringement Under California Common Law

119. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs, inclusive, as though fully set forth herein.

120. Defendants' conduct as alleged and described above further constitutes trademark infringement under California common law.

121. As alleged herein, the BIG BOY Marks and Common Law Marks are distinctive and potential purchasers and purchasers in California have come to associate the S & P Fresh Infringing Website, S & P Infringing Instagram, S & P Fresh Infringing Merchandise, Bobs5150 Infringing Website, and Bobs5150 Infringing Merchandise with Plaintiff.

122. Plaintiff's use of the BIG BOY Marks and Common Law Marks predates Defendants' adoption of the same and have been in continuous use by Plaintiff through the present date.

123. Defendants' unauthorized use of the BIG BOY Marks and Common Law Marks as alleged herein has caused and is likely to continue to cause confusion and deceive consumers as to the origin, source, sponsorship, or affiliation of the S & P Fresh Infringing Website, S & P Infringing Instagram, S & P Fresh Infringing Merchandise, Bobs5150 Infringing Website, and Bobs5150 Infringing Merchandise, and is likely to cause consumers to believe, contrary to fact, that Defendants' websites and merchandise as alleged herein are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendants

are in some way affiliated with or sponsored by Plaintiff, all in violation of Plaintiff's rights under California common law.

124.   Upon information and belief, Defendants' actions have been and are deliberate, willful, and in bad faith.

125.   As a direct and proximate result of the unlawful acts described above, Plaintiff has been damaged, and Defendants have been unjustly enriched, in an amount to be determined at the time of trial.

126.   Unless enjoined by this Court, Defendants' unlawful acts will continue to cause irreparable damage, loss, and injury to Plaintiff for which it has no adequate remedy at law.

## SEVENTH CAUSE OF ACTION

### Unfair Competition Under California Common Law

127.   Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs, inclusive, as though fully set forth herein.

128.   Defendants' conduct as alleged and described above further constitutes unfair competition under California common law.

129.   As alleged herein, Defendants, without authorization, falsely and deceptively used the BIG BOY Marks and Common Law Marks in California to manufacture, advertise, sell, and/or distribute the S & P Fresh Infringing Merchandise and/or Bobs5150 Infringing Merchandise, in violation of Plaintiff's rights under California common law.

130.   As a result of Defendants' conduct, as alleged herein, in passing off the website and goods as alleged herein as those of Plaintiff, selling and/or distributing products confusingly similar to those of Plaintiff, and otherwise exploiting Plaintiff's BIG BOY Marks as alleged herein, the public is likely to be deceived about the source of the S & P Fresh Infringing Website, S & P Infringing Instagram, S & P Fresh Infringing Merchandise, Bobs5150 Infringing Website, and Bobs5150 Infringing Merchandise

131.   Defendants' acts described herein are likely to cause confusion, deception, or mistake, and thereby constitute unfair competition in violation of Plaintiff's rights.

132.    Upon information and belief, Defendants' actions have been and are deliberate, willful, and in bad faith.

133.    Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiff in the form of lost sales, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this Court. Plaintiff has no adequate remedy at law.

134.    Plaintiff is entitled to, among other relief, injunctive relief, monetary relief, and punitive damages, together with prejudgment and post-judgment interest.

## **DEMAND FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully pray for entry of a judgment and relief as follows:

A.    For a judgment that Defendants have infringed Plaintiff's trademark rights in violation of the Lanham Act, 15 U.S.C. § 1114;

B.    For a judgment that Defendants have counterfeited Plaintiff's trademark rights in violation of the Lanham Act, 15 U.S.C. § 1114;

C.    For a judgment that Defendants haves engaged in unfair competition and false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a);

D.    For a judgment that Defendants have diluted and tarnished Plaintiff's trademark rights in violation of the Lanham Act, 15 U.S.C. § 1125(c);

E.    For a judgment that Defendants have engaged in unlawful business practices in violation of the California Business and Professions Code § 17200;

F.    For a judgment that Defendants have engaged in trademark infringement and unfair competition in violation of the common law of California;

G.    For a judgment that Defendants' foregoing misconduct was willful and intentional;

H.    For a preliminary and permanent injunction enjoining Defendants and their agents, officers, directors, employees, and all persons in privity or active concert or participation with them, directly or indirectly, from engaging in the foregoing misconduct;

I.    For an order awarding Plaintiff, under 15 U.S.C. § 1117, all profits received by Defendants from the sales and revenues of any kind made as a result of Defendants' infringement, counterfeiting, and/or dilution of Plaintiff's trademark rights (including, but not limited to, damages awarded pursuant to 15 U.S.C. § 1117 trebled and statutory damages pursuant to 15 U.S.C. § 1117(c) in the amount of $2,000,000.00 per counterfeited mark;

J.    For a judgment and award of any supplemental damages sustained by Plaintiff for any continuing post-verdict infringement and/or dilution of Plaintiff's trademark rights until entry of final judgment with an accounting as needed;

K.    For an order finding that this case is exceptional and awarding Plaintiff its costs, expenses, and disbursements incurred in this action, including reasonable attorneys' fees as available by law to be paid by Defendants;

L.    For an award of pre-judgment interest, post-judgment interest, and costs in this action; and

M.    For an award of such other relief to Plaintiff as this Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

DATED:  August 1, 2025          **FOLEY & LARDNER LLP**
                                 Ashley M. Koley
                                 Kadie M. Jelenchick


                                 /s/ Ashley M. Koley
                                 Ashley M. Koley
                                 Attorneys for Plaintiff Big Boy Restaurant Group, LLC

COMPLAINT
Case No. 2:25-cv-07103